878 F.2d 179
 CAUDILL CONSTRUCTION COMPANY; Liberty Mutual Insurance
Company, Petitioners,
v.
Clyde ABNER; Director, Office of Workers' Compensation
Programs, United States Department of Labor, Respondents.
 No. 88-3439.
 United States Court of Appeals,
Sixth Circuit.
 Cause Argued Feb. 22, 1989.
Decided June 30, 1989.
 
 Gene Clark (argued) Clyde Abner, Manchester, Ky., for Clyde Abner.
 Barbara J. Johnson, Sylvia T. Kaser (argued), John Jeffrey Ross, U.S. Dept. of Labor, Office of the Solicitor, Washington, D.C., for Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor.
 John T. Chafin (argued), Francis, Kazee & Francis, Prestonsburg, Ky., for Caudill Const. Co., and Liberty Mut. Ins. Co.
 Before: WELLFORD and NORRIS, Circuit Judges; and EDWARDS, Senior Circuit Judge.
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 This review of an order of the Benefits Review Board requires us to revisit our decision in Warner Coal Co. v. Director, Office of Workers' Comp. Prog., 804 F.2d 346 (6th Cir.1986), where we concluded that the insurance carrier of a coal mine operator responsible for the payment of black lung benefits is a party to the administrative proceedings that determine the validity of a miner's claim.
 
 
 2
 Respondent, Clyde Abner, had been employed by Caudill Construction Company. At that time, Caudill was insured by petitioner, Liberty Mutual Insurance Company. Subsequently, Caudill changed insurers so that at the time Abner filed a claim for black lung benefits, it was insured by Old Republic Insurance Company. Notice of Abner's claim was sent to Old Republic and Caudill--Liberty Mutual did not receive notice within the time allotted Caudill to challenge the claim. The narrow issue to be addressed is whether, under these circumstances, the deputy commissioner had authority to notify the proper carrier when his investigation revealed that he mistakenly notified the wrong insurance carrier. For the reasons discussed below, we hold that he did.
 
 BACKGROUND
 
 3
 On April 18, 1979, a notice was sent to Caudill and Old Republic informing them of Abner's claim for black lung benefits filed on August 22, 1975.
 
 
 4
 On September 10, Caudill and Old Republic were advised of an initial finding that Abner was entitled to benefits, and that they had thirty days from the date of the notice within which to contest the finding.
 
 
 5
 Neither Caudill nor Old Republic responded within the thirty days. On October 24, Old Republic notified Caudill that it had received notice of the initial finding and asked Caudill to forward pertinent information. On December 6, Old Republic advised the Department that it had been unable to obtain documentation in connection with Abner's claim and requested information that would enable it to determine whether it was, in fact, the carrier for Caudill.
 
 
 6
 On January 16, 1980, Old Republic denied coverage for the reason that Abner's claim was filed prior to April 3, 1976, the date on which Old Republic's coverage became effective, and sent a copy of the denial to the Department.
 
 
 7
 On January 19, the deputy commissioner entered an award of benefits against Caudill. A cover letter to Caudill stated that it could no longer "raise issues or present evidence with respect to issues inconsistent with the initial findings," since thirty days had expired from September 10, 1979 and Caudill had not responded. Caudill was advised to begin making payments to Abner and was told that, upon its failure to do so, benefits would be paid from the Black Lung Disability Trust Fund and Caudill would be required to reimburse the fund.
 
 
 8
 However, the deputy commissioner subsequently decided to proceed anew. On July 17, a Notice of Initial Finding was sent to Caudill and Liberty Mutual and, on August 4, Liberty Mutual filed a controversion of the claim on behalf of Caudill. The deputy commissioner again determined that Abner was entitled to benefits.
 
 
 9
 A hearing was held before an A.L.J. which resulted in a decision denying benefits. Abner's counsel did not object to the filing of the controversion and, accordingly, the A.L.J. did not address that issue. Abner filed a pro se appeal with the Benefits Review Board contending that Caudill had failed to file a timely controversion and that the A.L.J. had erred in denying him benefits.
 
 
 10
 On March 31, 1988, the Board issued a decision which vacated the decision of the A.L.J. and remanded the case for payment of benefits. Referring to our opinion in Warner Coal, the Board concluded that the deputy commissioner is not under a duty to seek out interested parties; instead, he is only required to provide notice to parties who have come to his attention. Accordingly, it determined that the deputy commissioner's award had become final when Caudill failed to timely contest Abner's claim and, therefore, the A.L.J. was without jurisdiction to consider the matter when it was later contested by Liberty.
 
 
 11
 Petitioners contend that Liberty's filing of its controversion was timely since the deputy commissioner was authorized to correct his mistake in notifying the wrong carrier; that, under our decision in Warner Coal, due process required notice to Liberty; and that, at the A.L.J.'s hearing, Abner failed to object to Liberty being permitted to contest the claim.
 
 
 12
 Respondent Director has filed a brief which argues that the Board's position is erroneous and suggests that the case be remanded.
 
 DISCUSSION
 
 13
 In Warner Coal, we concluded that, under the Black Lung Act and regulations, the operator's insurance carrier is subject to liability in black lung benefits proceedings and, therefore, is entitled to notice as a party to the litigation. The Act and regulations do not contemplate that the carrier's exposure is limited to indemnifying an operator which has been found liable for payments of benefits. Instead, the carrier is itself subject to being adjudicated liable on the claim. Accordingly, due process requires the carrier be given adequate notice and an opportunity to defend on the question of direct liability to the claimant. Warner Coal, 804 F.2d at 347.
 
 
 14
 Here, it was the intent of the deputy commissioner to give notice to the proper carrier once its identity was discovered. However, the Board held that the commissioner was without authority to do so, in view of the operator's procedural default in failing to respond to the notice. Because the finding of liability against the operator was final, the Board reasoned, Liberty's controversion was ineffective to trigger the hearing before the A.L.J. and, therefore, he was without jurisdiction to hear the merits of Abner's claim.
 
 
 15
 The Director correctly concedes that the Board erred in its application of our opinion in Warner Coal to the facts of this case. The question presented by this appeal is not whether the deputy commissioner is required to search out the proper insurance carrier. Instead, the issue is whether he has the authority to notify the proper carrier when his investigation reveals that the wrong carrier was notified. Clearly, under the rationale of Warner Coal, he does have that authority, since the carrier must receive notice and be afforded an opportunity to defend, if it, rather than the employer alone, is to be held liable to pay benefits.
 
 
 16
 Moreover, as pointed out by the Director, the deputy commissioner's conduct was consistent with existing procedures when 20 C.F.R. Sec. 725.412(c), which permits notification of a new operator where investigation reveals that prior identification was mistaken, is read in conjunction with Warner Coal. Certainly, this case illustrates that carrier identification can be as difficult as ascertaining a responsible operator. We also agree with the Director's contention that 33 U.S.C. Sec. 922, which is made applicable to black lung adjudication through 30 U.S.C. Sec. 932(a), may be relied upon by the deputy commissioner to correct such a misidentification in the case of a responsible carrier, even where a final compensation order has been issued against the operator.
 
 
 17
 Nothing has come to our attention which would excuse Caudill's procedural default. Accordingly, we are unable to say that the Board erred in barring Caudill from participating in the proceedings before the A.L.J. We would affirm the liability of Caudill on this record.
 
 CONCLUSION
 
 18
 The Board's order is vacated insofar as Liberty's interests are concerned, and this cause is remanded to the Board to consider the merits of Abner's appeal from the A.L.J.'s order denying him benefits with respect to the liability of Liberty Mutual.